```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
PETER ROST,                                  :
                                             :
                Plaintiff,                   :
                                             :   MEMORANDUM OPINION
        -v.-                                 :
                                             :   05 Civ. 10384 (GBD) (GWG)
                                             :
PFIZER, INC., et al.,                        :
                                             :
                Defendants.                  :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Appearances of counsel:

Jon Warren Green
Green Savits & Lenzo, LLC
35 Airport Road, Suite 200
Morristown, NJ 07960
Attorney for plaintiff

Ronald M. Green
Michael A. Kalish
Epstein, Becker & Green, P.C. (New York)
250 Park Avenue
New York, NY 10177
Attorney for defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PETER ROST, :

:

         Plaintiff, :   MEMORANDUM OPINION

   -v.-

:    05 Civ. 10384 (GBD) (GWG)

PFIZER, INC., et al., :

:

         Defendants.
-----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Peter Rost brings this action against his former employer, Pfizer, Inc., alleging that Pfizer violated New Jersey's Conscientious Employee Protection Act, see N.J. Stat. Ann. §§ 34:19-1-19-14, New Jersey common law, and the federal False Claims Act, see 31 U.S.C. § 3730(h), when it discharged Rost from his employment in 2005 in retaliation for being a whistleblower. Rost has not obtained comparable employment since he left Pfizer. Rost's expert has calculated Rost's economic losses for the period after his termination at over $9 million. One of the many contested issues in this case is whether Rost fulfilled his duty to mitigate his damages by making adequate efforts to look for work after he was fired.

      To address the mitigation issue, the defendants seek documents and deposition testimony that would reveal Rost's assets during the period after he left Pfizer. They argue that this information is relevant to the mitigation question because the existence of significant assets may explain Rost's "lackadaisical attitude toward finding meaningful employment." Essentially, defendants argue that Rost's assets are relevant to Rost's motive to look for work. They argue that discovery of assets has "particular significance" in light of Rost's claim that he "abandoned

the pharmaceutical industry and pursued a new career as an author and freelance journalist, claiming no meaningful income to show for his efforts." See Defendants' Memorandum of Law in Support of Motion to Compel Assets Discovery, filed Dec. 21, 2007 (Docket # 140), at 12-13.

Under the Federal Rules of Civil Procedure, a party may discover any non-privileged information "that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The evidence "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Court is aware of two cases that deal squarely with the question of whether a former employee's finances are relevant to the issue of mitigation of damages resulting from lost wages. In Custer v. Penn State Geisinger Health Sys., 2005 WL 2860540, at *2-3 (M.D. Pa. Nov. 1, 2005), the court granted a motion in limine in an employment discrimination action permitting defendants to introduce evidence of plaintiff's receipt of disability benefits to show the extent to which the benefits "motivated (or did not motivate) the Plaintiff to find further employment following his termination." Id. at *3. The court concluded that the receipt of benefits was "highly relevant to and probative of Plaintiff's incentive to mitigate his damages." Id. No explanation was given, however, for why his motivation or incentive to mitigate damages was relevant. Similarly, in Schwab v. Wyndham Int'l, Inc., 2005 WL 697425, at *1 (N.D. Tex. Mar. 8, 2005), the court concluded that a defendant's request for information about the plaintiff employee's sources of income was within the Rule 26 standard because such information might "help establish a lack of incentive to find alternative employment." Id. at *1. Again, the court
2

gave no explanation for why a lack of incentive to find employment would be relevant to the issue of mitigation.

An individual's assets are certainly relevant to his motive to look for work. In other words, if there were evidence that a former employee had millions in the bank following his termination, it would make it "more probable" that he had no motive to look for work "than it would be without the evidence." Fed. R. Evid. 401. The question, however, is whether a plaintiff's motive to look for work is indeed a fact "that is of consequence to the determination of the action." Id.

To answer this question, we examine what an employer must show to prove that a former employee has failed in his duty to mitigate. Under Second Circuit case law, an employer meets this burden by showing "'(1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it.'" Broadnax v. City of New Haven, 415 F.3d 265, 268 (2d Cir. 2005) (quoting Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir. 1997)).[1] The defendants argue that the extent of Rost's assets and his motive to look for work are relevant to the second element of this test. That is, they do not seek to use the asset information as evidence of what efforts Rost actually made to look for work – a factual question that does not appear to be in dispute. Rather, they seek to use the assets to show whether his efforts were "reasonable."

The problem with this argument is that, because the second element of the mitigation standard asks for a determination of "reasonable[ness]," the test is an objective one. Thus, the trier of fact will be asked to examine what Rost actually did to look for work only for the purpose of determining whether, under an objective standard, his actions reflected "reasonable

---

[1] An employer need not show the first element if it can prove that the employee made no reasonable efforts to seek comparable employment. Broadnax, 415 F.3d at 268.

efforts." Because the actions an employee takes to find work themselves cannot be evidence of their own reasonableness, the motive for those actions is similarly not relevant to the reasonableness inquiry. In other words, Rost's subjective motivations for taking particular actions to find alternative work are irrelevant to the question of whether his conduct was objectively reasonable.

Defendants argue that the mitigation standard is not purely objective because courts have stated that "an assessment of the reasonableness of a plaintiff's effort to mitigate . . . entails a consideration of such factors as 'the individual characteristics of the claimant and the job market.'" Dailey, 108 F.3d at 456 (quoting Rasimas v. Mich. Dep't of Mental Health, 714 F.2d 614, 624 (6th Cir. 1983)). Certainly, the individual characteristics of a plaintiff as they relate to his perceived employability – his education, skills, and so forth – would be relevant to the reasonableness of his efforts to find work. See generally Chopra v. General Elec. Co., 2007 WL 4439130, at *14 (D. Conn. Dec. 3, 2007) (effort to mitigate "should be evaluated in light of the individual characteristics of plaintiff, such as his age and the job market"). But if the employee's own efforts to find work were part of the "individual characteristics" to be considered, it would convert the mitigation test into a subjective one.

At oral argument on the motion, defendants suggested that Rost might argue at trial that his lack of resources meant that he did not have the financial means to undertake certain steps to mitigate – for example, to purchase an airplane ticket to a distant city for a job interview. The Court can imagine scenarios under which an ex-employee might argue that his discharge rendered him without the funds necessary to mitigate his damages. But Rost has conceded that he will make no such argument and, more broadly, that he will not raise for any reason the issue

4

of his assets or lack thereof following his termination from Pfizer. In light of these concessions, defendants have not shown that Rost's assets are relevant to any issue in this case. To the extent Schwab and Custer hold otherwise, the Court respectfully disagrees with these cases.

Accordingly, the motion to compel production of this information is denied and plaintiff's cross-motion for a protective order with respect to the same information is granted.

SO ORDERED.

Dated: February 28, 2008
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

of his assets or lack thereof following his termination from Pfizer. In light of these concessions, defendants have not shown that Rost's assets are relevant to any issue in this case. To the extent Schwab and Custer hold otherwise, the Court respectfully disagrees with these cases.

Accordingly, the motion to compel production of this information is denied and plaintiff's cross-motion for a protective order with respect to the same information is granted.

SO ORDERED.

Dated: February 28, 2008
New York, New York

*/s/ Gabriel W. Gorenstein*

GABRIEL W. GORENSTEIN
United States Magistrate Judge